The next case this afternoon is 524-0733, People v. Webster. Arguing for the appellant is Anna Sibulski. Arguing for the appellee is Corinne Navarro. Each side will have 10 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Good afternoon. Good afternoon. Good afternoon. Mr. Sibulski, if you're ready to begin, you may. Okay. May it please the court. I'm Annie Sibulski with the Office of the State Appellate Defender, representing Mr. Calvin Webster. Like an onion, Mr. Webster's petition alleging ineffective assistance of appellate counsel has many layers. However, when you peel back the layers of appellate counsel and post-plea counsel, at the heart of his petition is Mr. Webster's claim that plea counsel was ineffective when she urged Mr. Webster to take a plea deal to avoid the life sentence of an attempt to murder charge that she could have moved to dismiss on her own, pursuant to compulsory joinder in the Speedy Trial Act. Mr. Webster's petition raised an arguable claim of ineffective assistance of counsel sufficient to meet the first stage's just standard. First, it was arguably unreasonable for plea counsel to not move to dismiss count five as compulsory joinder applied and 133 days had passed since he was taken into custody. The state conceded that it was the same act in the same jurisdiction. However, it asserts the state did not have knowledge regarding the attempt to murder when it brought the original charges and that attempt to murder was not a new and additional charge that would trigger compulsory joinder. However, the state absolutely had knowledge of the underlying facts of count five, knowledge being a conscious awareness. When it brought the initial charges, the state was not looking for the identity of the shooter. It knew enough that it pursued aggravated battery charges against Mr. Webster. The state acknowledges that they knew exactly who the victim was, which witnesses to call, and who the treating physicians were. They also knew that the victim had been shot twice through the back. Additionally, the state itself said at a hearing 110 days before the attempted murder charges added, it could have very well been a murder charge, but for the fact that the victim did not die. In its brief, the state tried to convince this court that its challenges in bringing witnesses to court was somehow relevant to whether or not they had knowledge. And it invites this court to rely on appellate opinion and people be good in. However, the premise, that premise that the difficulties in bringing witnesses is relevant was soundly rejected by the Illinois Supreme Court in that very case on appeal, where it found that though the charges were not subject to compulsory joinder because they were not based on the same act. If they were the issues with gathering evidence had no bearing on whether or not compulsory joined or applied. The bottom line is that the prosecution had a conscious awareness of the facts that would support an attempt to murder charge when it brought the charges. Second attempt to murder was a new and additional charge mandating compulsory joinder. Delays requested to or agreed by the defendant pertaining to the original charges do not apply to the later file charges that would have been included with the original charges. And a charge is new and additional if the initial charges did not contain material allegations of the relevant subsequent charge. In other words, the question here is whether or not the subsequent charge is basically the same charge so that it's fair to say that the defense's consent to prior continuances extends to subsequent charge. In this case, it's clear that count five was a new and additional charge. Crucially, none of the initial charges included the material allegation that could have the defense's whole strategy intent. So in the attempt to murder indictment, the state posited that Mr. Webster, without lawful justification and with the intent to kill, shot a .45 handgun seven times and striking the victim twice. Here, the mens rea is completely different as all the original charges only required knowledge. And that means that there is a potentially different because it's often the case that when you're facing an attempt murder charge, it's that specific intent element that the defense would focus on. Additionally, the new facts supporting the charge didn't appear in the original charges. The fact that the victim was struck twice, that there was an intent to kill, that there was a .45 handgun, that there were seven shots, those were all new facts in the count five that did not appear in the original three nor the fourth. And finally, the sentencing range was highly disparate where all three of the original charges plus the fourth count that was added later had a maximum of 30 years, whereas count five had a maximum of life. The state cites cases where the court had found subsequent charges were not new and additional. However, these cases are distinguishable because in these cases, the state was essentially correcting itself. So in People v. Woodrum, the state forgot to add an element in the first charging document of without lawful justification. The subsequent charges that they brought updated that language to include that but kept all of the other language the same. Thus, it wasn't a new and additional charge, but the same charge with updated language. In Phipps, the legislature amended the reckless homicide statute, which was what the state had originally charged the defendant with in that case, and they found that the reckless homicide statute was void. Therefore, the prosecution then charged the defendant with aggravated DUI. Although it was a different statute, this aggravated DUI had the same elements. It had the same penalty, and it led to the same conduct. They were really just swapping which statute. It was changing the same offense, and it would have been subject to the exact same defenses. In People v. Stocke, although there was a difference in the possible penalties of first-degree murder and second-degree murder, both crimes, again, had the same elements, making them subject to the same defenses besides second-degree murder's mitigating element, which isn't part of the state's case. Thus, as all of the elements of compulsory joinder applied, counsel absolutely should have moved to dismiss the claim and not let Mr. Webster plead based on the fear of count five's life sentence. Therefore, Mr. Webster made an arguable claim of counsel's unreasonable conduct. Additionally, Mr. Webster raised at least the gist of a claim of prejudice because the petition alleges that counsel's unreasonable assistance induced him to plea guilty. Mr. Webster and all defendants are entitled to the effective assistance of plea counsel. Allowing him to be in a significantly worse position heading into a plea is inherently prejudicial due to the nature of negotiations. Dismissing count five on the defense's motion would have meant that Mr. Webster could have either gone to trial as he intended or negotiated a better plea. If he could have negotiated even one year, month, or day off of his sentence, there would be prejudice. Mr. Webster's petition and common sense shows that it is at least arguable. Had Mr. Webster known count five could have been dismissed by his counsel's own motion, he would have not taken the plea. And common sense in this case is supported by the record. Mr. Webster's trial attorney repeatedly emphasized the risk of going to trial due to count five's life sentence. In a letter, she advised him to accept the plea to one of the lesser charges to avoid being convicted of attempted murder. Additionally, at the hearing on Mr. Webster's motion to withdraw his guilty plea, plea counsel admitted that she advised him to take the plea due to exposure to count five. The state's focus during plea bargaining was also on count five. In fact, in the hearing on Mr. Webster's motion to withdraw his plea, the state argued that it was obvious that he could have gotten life had the state not agreed to dismiss count five, using that point to argue that the plea deal was in Mr. Webster's benefit and therefore it was voluntary in knowing. Furthermore, the reason that Mr. Webster repeatedly said in the hearing that he wanted to withdraw his plea was that because he felt pressured, because his counsel told him that he would receive a life sentence, which was attached to count five if he did not plead guilty. With every party solely focused on count five during negotiations, it is arguable that Mr. Webster faced prejudice from counsel's unreasonable conduct. And for the foregoing reasons, Mr. Webster respectfully requests that this court reverse the trial court's summary dismissal of his pro se post-conviction petition and remand the case to a second stage hearing where he can be appointed counsel and amend his petition. Are there any questions? No questions here. Not at this time. You'll have time and reply. Ms. Navarro. Counsel, my name is Karen Navarro and I represent the people of the state of Illinois. Today I will be doing the oral argument for a brief that was written by one of my colleagues, Jamie Bella. On appeal, defendant appeals the trial court's dismissal of his first, I'm sorry, post-conviction petition following first stage proceedings. As such, what is looked at is whether the petition was frivolously or penalty without merit. Such is determined by looking at the petition and determining whether there are any arguable basis of facts or law. And during first stage proceedings, while the petition does not need to set forth a complete detailed factual recitation, the petition still needs to set forth facts that are objective and that can be independently corroborated. An appeal defendant argues that appellate counsel was ineffective as it should have brought forth on direct appeal a claim of ineffective assistance of both plea counsel and post-plea counsel for the failure to raise an issue of compulsory rejoinder. As such, the petition needs to set forth facts that counsel's performance was below the standard of reasonableness and that defendant was prejudiced. Now, in looking at whether appellate counsel was ineffective, we must look at the claims brought forth as it relates to both post-plea counsel and plea counsel. When looking at post-plea counsel, an appeal defendant argues that post-plea counsel was ineffective by failing to raise a claim of compulsory rejoinder. However, when looking at the post-conviction petition, the only claim that defendant brought forth and in detail argued was that post-plea counsel failed to raise a claim regarding defendant's mental fitness to stand trial and defendant's mental fitness to plead guilty. Thus, as it relates to post-plea counsel, the claim regarding to compulsory rejoinder is being brought for the first time on appeal since it was not included in the post-conviction petition and is thus forfeited. When looking to the plea counsel argument, their defendant in the post-conviction petition and appeal argues that counsel was ineffective by not moving to dismiss count five of the indictment, which raised the claim, I'm sorry, the charge of attempted murder, arguing that it was subject to compulsory rejoinder and thus the day of the trial violated the speedy trial violation and defendant's plea was essentially based on erroneous information. Defendant was originally indicted on June 11th. Trial was set for September 24th, which was within the 120 days. Prior to trial on September 12th, defendant filed for a continuance, which pushed the trial date to October 22nd, making the trial take place at the 133rd day. Now, originally, this delay was attributed to defendant because it was the defendant that moved for the continuous. However, on appeal, defendant argues that the delay cannot be attributed based on essentially the Williams rule, which provides that because count five was not before the court at the time the continuance was entered, it cannot be attributed to defendant. Now, this is true where compulsory rejoinder applies and where the subsequent charge is considered new and additional. Here, the state is submitting that the additional charge of count five was not considered new and additional because the previous four charges provided defendant with adequate notice as to what he was being charged and to prepare for trial. In the original indictment, defendant was charged with aggravated battery with a firearm and that he discharged the firearm and caused injury to a victim. Now, just nine days later, after the initial indictment, an additional charge of armed violence was added, which provided that defendant will not be charged with aggravated discharge of a firearm and that he knowingly discharged the firearm in the direction of another person, an armed habitual criminal. The initial indictment put defendant on notice that he was being charged for the act of discharging a firearm and causing injury to a victim. Now, count five of attempted murder provides that with the intent to kill, defendant shot a 45 handgun at the victim seven times, striking him twice. Now, while as counsel provides the detail of the fact that defendant shot a 45 handgun, that it was done seven times and that it struck the victim twice was not included in the previous, the action itself was included in the previous offenses. Shooting a firearm is essentially the same thing as shooting a 45 handgun. It's just providing that additional detail, but it doesn't negate the fact that defendant knew that he was being charged with discharging a firearm, just because it now includes that it was discharged seven times. Count five similarly says that the discharge struck the victim twice, but defendant was aware of this in the previous offenses where he was charged with causing injury to the victim and causing great bodily harm. Count five, all it did was detail these more specifically, but it does not negate the fact that the actions that was caused by defendant were the same and he was put on notice of that. Here, the only difference is that count five added the initial, the additional element of intent. However, even in looking at people versus Woodrum, the court there specifically looked at defendant's claim that a new element was added to a new charge and therefore that in itself considered, did not allow the delay, any delays to be attributed to him. And the court rejected that because even though it was one additional element, it didn't change the way that the defense approached trial. And this is made evident even by looking at defense counsel's statements during the trial where counsel stated to the court that it was prepared for trial, that it had considered multiple avenues, that it even had an alibi defense, but it was not able to use it based on the fact that a lot of the statements by defendant were not credible. So here, counsel specifically prepared for all of this, stated that it prepared for this. So this supports that one additional element did not, was not sufficient to state that defendant was not placed on notice. Here, that's why the state is providing that this was not a new and additional element. Thus, it was, the delay was still attributed to defendant. And since there was no error, there was no claim for the appellate counsel to bring forth on appeal. And then even looking at the prejudice prong that defendant was required to establish, and while just a gist is required, it still cannot be contradictory to the record. Here, defendant's claim in the post-conviction petition were contradicted by the record on many occasions. Defendant in the petition provided that the only reason he took the plea was because of that additional charge that was added on October 7th. However, defendant repeatedly stated that he did not want any plea, that he wanted to go to trial, that he wanted to prove his innocence, and never, never stated that it was because of that count five that was added, that he took a plea, because he didn't take it initially. Defendant, the state provided a plea agreement where there was a sentencing cap, which defendant rejected. It wasn't until days into the trial where the evidence was overwhelming as to all of the counts, that count one, count two, count three, count four, that defendant decided to take a plea. So here, even defendant's own words during the motion to withdraw, where he specifically said the only reason he took the plea was because he was forced, there was no mention that he said that I didn't want to take a plea. This negates the fact that now he's claiming I took the plea because of the count five that was added. So here, just looking at the petition on its own, it is contradicted by the record, and as such, the trial court was not in error by dismissing defendant's petition, because where there's no error and there's no prejudice, appellate counsel, plea counsel had no reason to bring forth this claim. As such, for these reasons, we do ask that this court reject defendant's argument. Thank you. Is there any questions? In the brief, and I know you said you didn't prepare the brief, you were arguing someone else's brief that someone, your colleague had prepared, but in your conclusion, the prayer is for this court to affirm defendant's conviction and sentence. You would like us to? To affirm the trial court's dismissal of the post-conviction petition. Okay. Thank you. Thank you. Any questions, Justice Moore? No questions. All right. Thank you. All right. Ms. Cebulski, you can have time to reply. You are muted. All right. May I please report? The state argued that Mr. Webster forfeited his claims regarding post-plea counsel because there's no place in the defendant's petition where he claims compulsory joint or incivility trial is related to post-plea counsel. However, I would like to direct this court to line 58 on C, the common law record, page 362, where he does allege appellate counsel in Caroline Ellis Borland provided ineffective assistance of counsel and that her performance fell below a reasonable level, which he failed to raise issues on direct appeal, alleging trial counsel's ineffectiveness and post-trial counsel's ineffectiveness as it related to A, failing to file a motion to dismiss count five under compulsory joinder in the Speedy Trial Act. While the petition did focus more on post-plea counsel's other potential errors of not looking into his mental fitness, this is a pro se petition where an untrained petitioner is asking to the court to take a closer look. And in this case, when they are acting pro se, court should review the petitions with a lenient eye, allowing borderline cases to proceed. And he did, in fact, allege this in his petition. And this court can then look at that and give it a little more leeway than it would a trained attorney. Second, the state seems to suggest that the underlying act of shooting a firearm gave Mr. Webster notice of an attempt murder charge. That position would swallow compulsory joinder whole and completely negate the Williams rule because compulsory joinder is directly related to offenses that stem from the same act. And courts have held even aggravated battery and domestic battery are separate offenses that trigger compulsory joinder if they weren't raised in the same and in the original charges. So I just want to point that out. And the other thing I want to respond to is that counsel's saying that they were ready for trial somehow is evidence of the defense being put on notice. However, compulsory joinder isn't and the Williams rule are an objective test of when the subsequent offense is brought. Were the original charges offenses that contain the material allegations that would then allow the defense to make their defense to the subsequent charge. And that's not the case here when intent is a completely different material allegation. And Woodrum, as I mentioned before, they charged the same offense. They just added without lawful that was a kidnapping case. And then finally about the state's assertion that the record rebuts Mr. Webster's claims, that's false and a misreading of the actual record. Because although Mr. Webster did say that he felt forced to take the plea, he said particularly what made me cave in and take it involuntarily was because she kept saying, take it, you're going to get life. They never actually ruled on whether or not compulsory joinder or ineffective assistance of counsel for counsel not moving to dismiss count five was a basis for withdrawing the guilty plea because Mr. Webster didn't even know that you could withdraw, that counsel could have withdrawn or moved to dismiss count five based on compulsory join during the speedy trial act. And the record shows that, yes, it's he did not want to plead guilty until the addition of count five. Let me ask you a question. What is the maximum, what was the total amount of time he got on this? He got 25 years. And what is the maximum he could get if we remand it back and let's say the court finds that there was error and gives him another trial? The maximum he could get. Without count five. Yeah, without count five, each count can have a maximum of 30. And then so maximum 30 years per count. 120 years. Well, some of them might merge. Right. And then so about 60 years is what we'd posit. Okay. Okay. I was just curious. Thank you. I know your time is up, but you were in the middle of a thought. So I'll let you finish your thought. All right. Thank you. So the first time that he seriously considered the plea, according to plea counsel was after jury selection. And this is also supported by the where in the hearing, he actually said the first time he found out that he could be sentenced to up to life was during that time, during the first plea negotiation during trial. And for those reasons, the record doesn't rebut the fact that he was scared of receiving life in prison. And he took the plea because of that. And the fact that counsel could have moved to was plainly ineffective assistance of counsel that prejudged him during these negotiations. Thank you. Thank you, Mrs. Moore. Any questions? No question. All right. Well, thank you both for your time. The briefs, although Miss Navarro, you didn't do the brief, but thank you for preparing the argument based on the brief. And thank you for your arguments here today. We will take the ruling in due course.